UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 23-CR-80184-MD

UNITED STATES OF AMERICA

v.

BAZELAIS FRANCOIS,

    Defendant.
_____/

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE INDICTMENT AND/OR IN THE ALTERNATIVE
DEFENDANT'S REQUEST TO DOWNFILE CHARGE TO ILLEGAL ENTRY

NOW COMES the United States of American, by and through the undersigned Assistant United States Attorney, hereby files its response in opposition to Bazelais Francois' (the "Defendant") *pro se* motion to dismiss the indictment upon on the grounds that the indictment fails to make a "prima facie [showing] of guilt or sufficient probable cause" (DE 30). Alternatively, Defendant requests that the charge be down filed to illegal entry (Id).[1] Because the indictment contains all elements of the charged offenses and informs the Defendant of the charges that he faces, the Court should deny the Defendant's motion to dismiss.

### I.    PROCEDURAL HISTORY

On September 6, 2023, U.S. Magistrate Judge Reinhart signed a complaint and arrest warrant authorizing the arrest of the Defendant (DE1). The affidavit in support of the complaint, which laid out sufficient facts in support of probable cause, charged the Defendant with illegally bringing aliens into the United States, in violation of Title 8, United States Code, Section 1324(a);

---

[1] It is within the United States Attorney's broad discretion in deciding whether and how to charge an offender based on rational and objective review of the facts, where the charges are supported by probable cause and where the decision to charge is in the interests of justice – as in this case.

failure to heave to, in violation of Title 18, United Stated Code, Section 2237, and assaulting, resisting, or impeding certain officers, in violation of Title 18, United States Code, Section 111(a)(1)(*Id.*).

On October 5, 2023, a Federal grand jury, sitting in the Southern District of Florida, returned a nineteen-count indictment against the Defendant, which charged the Defendant with various offenses.  The indictment charged the Defendant with encouraging and inducing aliens to enter the United States (Counts 1-17); failure to heave to, in violation of Title 18, United States Code, Section 2237(a)(1) (Count 18); and assaulting, resisting, or impeding certain federal employees, in violation of Title 18, United States Code, Sections 111(a)(1) and (b) (Count 19) (DE 3).

On December 19, 2023, the Defendant made his initial appearance (DE 8) and on December 28, 2023, the Defendant was arraigned on the indictment and ordered detained (DE 16). On June 13, 2024, the Defendant filed a motion to dismiss the indictment, alleging that it failed to state sufficient facts to establish probable cause (DE 30).

## II.     FACTUAL BACKGROUND

On August 25, 2023, Palm Beach County Sheriff Office's Marine Unit ("PBCMU") Deputies and U.S. Homeland Security Investigation Task Force Officers Daniel Frend and David Farrugia launched their marine unit to investigate a vessel, identified as a Tiara, approximately 30 feet, cabin cruiser bearing FL registration number FL9069NW (the "subject vessel"), travelling westerly towards the coast of Jupiter, Florida.  The FL registration Number was found to be fictitious.  A database check revealed that the registration number corresponded to a different vessel registered to an individual in Wellington, FL.

As Deputies approached the subject vessel, which was about three (3) nautical miles east of Jupiter, Deputies observed the Defendant at the helm piloting the boat. Also observed in plain view on deck were two 55-gallon fuel drums typically used in connection with smuggling activity. While initiating an investigative stop, the Deputies positioned their marked vessel closer to the subject vessel and engaged their emergency lights and sirens. Via the loudhailer, the Deputies directed the Defendant to stop the vessel. The Defendant slowed the vessel and stopped approximately 2.5 nautical miles offshore of Jupiter, Florida.

The deputies inquired of the Defendant where he was travelling from, to which he responded (in English) that he was coming from Haiti. During this exchange, a second male passenger emerged from the cabin and stood adjacent the Defendant. The Defendant then proceeded down into the cabin of the vessel and re-emerged with an infant in his arms. The Defendant then repositioned himself at the helm of the vessel. PBCMU deputies inquired of the Defendant as to the number of passengers on board, however, neither the Defendant the other male passenger responded. The Defendant instead re-engaged the subject vessel, placing it in gear, and maneuvered towards PBCMU's vessel.

While PBCMU deputies attempted to reposition their vessel, the Defendant accelerated and maneuvered the subject vessel towards PBCMU's vessel. In so doing, the Defendant's vessel violently struck the rear quarter section of PBCMU's vessel, coming to rest briefly on top of the PBCMU's port and center engines, rendering those engines inoperable.

When the Defendant's vessel maneuvered off the PBCMU's vessel, the deputies donned personal flotation gear, as the PBCMU's vessel began to take on a significant quantity of water. Without regard to the PBCMU's vessel and occupants, the Defendant continued to pilot the subject vessel on a westerly course towards the United States.

During this time, a second marked PBCMU vessel arrived on scene with emergency lights and sirens activated and pursued the subject vessel. Deputies on the second PBCMU vessel deployed munitions assisted signal rounds[2] in hopes that the Defendant would yield and stop. However, this proved to be ineffective, and the Defendant continued his course and speed towards the coast. With law enforcement in pursuit, the Defendant was observed as he jumped from the vessel several yards from shore, abandoning the vessel and the occupants of the vessel. The Defendant and several of the occupants of vessel swam to shore.

PBSO Aviation Unit assisted and maintained aerial surveillance. The PBSO Aviation Unit communicated the direction of travel of the suspected (later confirmed) unlawful migrants. The Defendant was initially attended to by good Samaritans on the beach and subsequently taken into custody by law enforcement. With the assistance of U.S. Customs and Border Protection UH-60 Blackhawk helicopter and PBSO Aviation Unit, seventeen (17) unlawful Haitian migrants, including a 3-year-old child, were detained.

A subsequent search of the subject vessel revealed an identifiable Hull number[3] and law enforcement discovered on board only one life preserver and no life jackets. In addition, the cabin quarters appeared to be confining for the number of migrants on the vessel.

The migrants were transported to U.S. Border Patrol for processing and the adult migrants were interviewed by HSI Agents.

Each of the migrant were interviewed and admitted that each was a Haitian national and citizen, with no lawful documentation to arrive, remain in or traverse the United States. Some of

---

[2] Because the flash bang rounds / munitions were deployed from a device designed to expel a projectile by action of an explosive (Def-Tec 40 mm LMT tactical single launcher – barrel is larger for the munition used), the device is a firearm under the definition of 18 USC 921(a)(3). See generally, *United States v. Woodruff*, 296 F.3d 1041, 1049 (11th Cir. 2002); *United States v. Hunt*, 187 F.3d 1269, 1271 (11th Cir. 1999).
[3] The subject vessel, 31.5' foot Tiara, was last registered in 2009 to an individual from Port St. Lucie, FL deceased at the time of the charged offense.

the migrants advised that either they or a family member had paid for their transport to the United States.

In a recorded post-*Miranda* interview, the Defendant stated that that he lived in Abaco, Bahamas, and that he and the unlawful migrants left Freeport, Bahamas around 1:00 a.m. that morning. The Defendant first claimed that an unidentified captain of the vessel jumped off the vessel prior to them reaching shore and that he took over driving the vessel. However, when asked why he rammed the marine unit vessel, the defendant then claimed he did not know how to stop the vessel. When asked why he didn't stop after striking the marine unit's vessel, the Defendant stated that someone told him if they are caught on the water they would be returned to Haiti. The Defendant further stated that the subject vessel was equipped with a GPS, which he used to navigate towards the United States but that it did not have a set destination.

Importantly, the Defendant was asked why he was holding a baby, he stated that he thought the officers were going to shoot him, so he held the baby.

### III. LEGAL STANDARD

Fed. R. Crim. P. 7(c)(1) provides that an indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). The Supreme Court in *Hamling* further opined that it is generally enough for the indictment to track the words of the charging statute, "as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary

to constitute the offence intended to be punished.'" *Hamling*, 418 U.S. at 117 (internal citation omitted).  The Eleventh Circuit further clarified that Courts generally consider ***only*** the indictment itself to determine whether or not the indictment is sufficient. *United States v. Critzer*, 951 F.2d 306, 307-08 (11th Cir. 1992) (***emphasis added***)(in analyzing motion to dismiss indictment for insufficiency, district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes, not facts the government expects to prove); *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir.1987)("a court may not dismiss an indictment ... on a determination of facts that should [be] developed at trial.").

An indictment is legally sufficient if it (1) contains the "essential elements" of the charged offense, (2) notifies the defendant of the charges to be defended against, and (3) protects the defendant from double jeopardy. *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002); *see also United States v. Varkonyi,* 645 F.2d 453, 456 (5th Cir. 1981); s*ee also United States v. Leonard*, 4 F.4th 1134, 1143 (11th Cir. 2021).

**IV.	DISCUSSION**

The Defendant seeks to dismiss the indictment and focuses his challenge to the charges he identified as "human trafficking," that is, the counts which allege a violation under Title 8, United States Code, Section 1324(a) (DE 30, p.1).[4] In relevant part, he claims that the indictment does not set forth sufficient allegations to constitute an offense. The Defendant sets forth a series of unsupported claims outside the face of the indictment to dispute the factual allegations in the indictment. The Defendant's factual disputes at this stage are barred.  If an indictment contains the elements of the charged offense and sufficiently notifies the defendant of what the facts are - as

---

[4] The Defendant does not address counts 18 and 19, as such, the government will not address those Counts except to state that those Counts contain the elements of the charged offense and sufficiently notifies the Defendant of the facts.

6

the indictment does here - then a challenge to the facts at this stage of the prosecution is improper. Accordingly, the Court should deny this motion.

Counts 1 -17 of the indictment provide as follows:

> On or about August 25, 2023, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant, Bazelais Francois, did knowingly encourage and induct an alien, as set forth in Counts 1-17 [], to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence is and will be in violation of the law…"

(DE 3).

As charged in the indictment, each of Counts 1-17 identified an alien by his or her initials. (*Id*.). Here, the indictment sufficiently alleges a violation. Specifically, each set of offenses, i.e., encouraging and inducing aliens to enter the United States (Counts 1-17), failure to heave to (Count 18), and assaulting, resisting, or Impeding certain Federal Employees (Count 19), tracks the language of the applicable statute and notifies the Defendant of the date of the alleged offense. Counts 1-17 further enumerated the specific alien by initials, and as to Count 18, identified the Federal Employees. Thus, the indictment sets forth the "elements of the offense charged and informed [the Defendant] of the charges [he] face[s]," *United States v. Sharpe*, 438 F.3d 1257, 1264 (11th Cir. 2006), and "[t]hat is enough." *United States v. Bazantes*, 978 F.3d 1227, 1246 (11th Cir. 2020) (noting that an indictment "can simply track the language of the statute the defendants have been charged with violating so long as it also alleges enough facts to inform the defendants what they have been charged with doing"). Accordingly, viewed in the light most favorable to the government, because the indictment tracks the language of the applicable statutes and sets forth enough information to inform the Defendant as to what he has been charged with doing, the Court should deny the motion to dismiss as a matter of law.

Unlike in the civil context where a plaintiff must show evidence of undisputed facts to survive a motion for summary judgment and proceed to trial, "[t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence…" U*nited States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (quoting *Critzer*, 951 F.2d at 307 (citation omitted)) (reversing the district court's dismissal of an indictment because "[b]y looking beyond the face of the indictment and ruling on the merits of the charges against Salman, the district court in effect granted summary judgment in favor of the defendant").

Because the indictment tracks the language of the applicable statutes and informs the Defendant of the charges against him, the indictment, therefore, alleges facts sufficient to state violations of encouraging and inducing aliens to enter the United States, failure to heave to, and assaulting, resisting, or impeding certain Federal Employees. The Court should deny the Defendant's motion.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny the Defendant's motion to dismiss the indictment.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

/s/ *Robin W. Waugh*
ROBIN W. WAUGH
Assistant United States Attorney
Florida Bar #: 537837
500 South Australian Avenue, 4th Flr.
West Palm Beach, Florida 33401
Tel: (561) 820-8711

**CERTIFICATE OF SERVICE**

I HEREBY certify that on June 24, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF and via U.S. mail to Defendant Bazelais Francois.

/s/ *Robin W. Waugh*
ROBIN W. WAUGH
Assistant United States Attorney